UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )
                                     )
    VS.                              ) No. 2:24-CR-0065-Z-BR-2
                                     )
ROSALINDA CLARINDA MARTINEZ,         )
                                     )
                    Defendant.       )
_____)


ELECTRONICALLY-RECORDED REARRAIGNMENT HEARING
BEFORE THE HONORABLE LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE
JANUARY 13, 2025
AMARILLO, TEXAS

FOR THE PLAINTIFF:

    JOSHUA J. FRAUSTO
    UNITED STATES ATTORNEY'S OFFICE
    500 South Taylor Street
    Amarillo, TX  79101
    (806) 324-2322


FOR THE DEFENDANT:

    ERIC COATS
    OFFICE OF FEDERAL PUBLIC DEFENDER
    500 South Taylor Street, Suite 110
    Amarillo, TX  79101
    (806) 324-2370


    Proceedings recorded electronically; transcript produced by
computer-aided transcription.
_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

1          (Proceedings commenced at 1:54 PM.)

2          THE COURT:  The Court calls cause No.

3    2:24-CR-65-Z-BR-(2), *United States of America versus Rosalinda*

4    *Clarinda Martinez.*

5          MR. FRAUSTO:  United States is present and ready,

6    Your Honor.

7          MR. COATS:  Defendant is ready, Your Honor.

8          THE COURT:  All right.  Good afternoon, ma'am.

9          THE DEFENDANT:  Good afternoon.

10         THE COURT:  Could you raise your right hand to take the

11   oath?

12         Do you solemnly swear that the testimony you will give

13   today will be the truth, the whole truth, and nothing but the

14   truth, so help you God?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  All right.  You can go ahead and put your

17   hand down.

18              EXAMINATION QUESTIONS BY THE COURT:

19   Q.   Are you "Rosalinda Clarinda Martinez"?

20   A.   Yes, ma'am.

21   Q.   Okay.  Do you intend to plead "guilty" today to Count Six of

22   an Indictment that charges you with Convicted Felon in Possession

23   of a Firearm?

24   A.   Yes, ma'am.

25   Q.   Before I can recommend to our District Judge -- he's the

1    other judge in our building -- that he accepts the guilty plea

2    you intend to enter, I have to ask a lot of questions.  There are

3    two reasons that I have so many questions at a hearing like this

4    one:

5        First, I have to make certain that you understand all of the

6    rights you're giving up by pleading guilty; and then

7        Second, I will ask a set of questions towards the end of the

8    hearing to make certain that we have facts in your case that do

9    support a guilty plea.

10       Do you understand why I'll ask so many questions?

11   A.   Yes, ma'am.

12   Q.   Some of the questions that I will be asking today will be

13   long.  So if for that reason or any other reason you think that

14   what I'm asking you is confusing, will you feel comfortable

15   telling me that?

16   A.   Yes, I will.

17   Q.   Do you understand that you have the right to talk privately

18   with your attorney at any point during the hearing?

19   A.   Yes, ma'am.

20   Q.   If you answer my questions without telling me that I've

21   asked something confusing or that you want to talk to your

22   attorney, can I then assume that you did understand what you

23   answered?

24   A.   Yes, ma'am.

25   Q.   And I should also add in:  I'm getting over a cold and my

1    voice is a little crackly, if you will, and so if you don't

2    understand one my questions for that reason, will you tell me

3    that, too?

4    A.   Yes, ma'am, I will.

5    Q.   Okay.  Thank you.

6        Do you understand that at the beginning of the hearing I did

7    place you under oath which means if you were to answer any of

8    these questions falsely, the Government could prosecute you for

9    what is called "perjury" or making a false statement?

10    A.   Yes, ma'am.

11    Q.   I know I've said your name already a few times, but we're

12    recording everything in your case during this hearing.  For

13    purposes of that recording, could you tell me your full name,

14    please, ma'am?

15    A.   Rosalinda Clarinda Martinez.

16    Q.   Thank you.  How old are you?

17    A.   I'm 31.

18    Q.   How far did you go in school?

19    A.   Seventh grade.

20    Q.   In the last 12 months have you been treated for any kind of

21    mental illness?

22    A.   No.  I've been trying to, but no.

23    Q.   Okay.  Is there, I guess, anything you can think of about

24    the fact that you have been trying to access some mental health

25    services but haven't been able to that makes you think you won't

1    be able to understand what's going to happen in court?

2    A.    No, ma'am.

3    Q.    In the last 12 months have you been treated for any kind of

4    addiction to narcotic drugs?

5    A.    No, ma'am.

6    Q.    Today, are you under the influence of any drug, alcoholic

7    beverage or medication of any kind?

8    A.    No, ma'am.

9    Q.    While you have been out at the Randall County Jail, have you

10   been taking any type of medicine on a daily basis?

11   A.    No.  Recently, no.

12   Q.    Okay.  When was the last time you were taking any kind of

13   medication out there?

14   A.    When I got my teeth pulled.

15   Q.    Okay.  About how long ago was that?

16   A.    Like last week.

17   Q.    Okay.  So were you on some pain medication or something?

18   A.    Yes.

19   Q.    All right.  Is there anything you can think of about the

20   fact that you had some teeth pulled recently and you also had

21   some pain medication for that that makes you think you won't

22   understand what's happening in court today?

23   A.    No, ma'am.

24   Q.    One of the things that we will do during the hearing is to

25   talk about the different documents that you signed to get ready

1    to come to court.  The document I want to talk with you about

2    first is a one-page document.  It has to do with your agreement

3    or your consent to have me be the judge that hears the guilty

4    plea.  I know you've signed that document but, again, because

5    we're making a record in your case, I still need to give you an

6    explanation about the purpose of that document.  Then I'll have a

7    couple of follow-up questions.

8        What that consent document does is explain that you have a

9    choice as far as which of our two judges in the building hears

10   your guilty plea.  You do have the right to have the other judge,

11   who is the District Judge, hear the guilty plea or you can agree

12   to have me, as the United States Magistrate Judge, hear the plea

13   this afternoon and then, when it's over, I'll make a

14   recommendation to the District Judge that he either accepts or

15   rejects the plea.

16       Before you signed the consent document, did you have a

17   chance to talk to your attorney about which of our two judges

18   would hear the guilty plea in your case?

19   A.   No.  I didn't hear none of that.  That's -- That's the first

20   of me understanding about the different judges.

21   Q.   Okay.  He may have gone over that with you.

22   A.   Yeah, he went over it with me, but I just -- he didn't

23   explain that part to me.

24   Q.   Okay.  Well, everybody has a different way of explaining all

25   of that.  Did what I tell you, I guess, make sense to you?

1    A.    Yes, ma'am.

2    Q.    Okay.  Do you want to talk to Mr. Coats anymore in terms of

3    questions or any -- or get his viewpoint on the two different

4    judges or how that works?

5    A.    Partly, yeah.

6    Q.    Okay.  Yeah, go ahead and talk to him about that.

7          (The Defendant consulted with her attorney off the record.)

8    Q    (By The Court) Did you have enough time to talk to Mr. Coats

9    about the consent document and which of the judges might conduct

10   the plea?

11   A.    Yes, ma'am.

12   Q.    All right.  After, I guess, seeing and signing the document

13   before today, then listening to both me and your attorney explain

14   it in court, do you have any questions as far as which of the two

15   judges hears the guilty plea?

16   A.    No, ma'am.

17   Q.    Okay.  Is it okay with you if we go forward with the hearing

18   this afternoon with me being the judge that does your hearing,

19   knowing I'll make the recommendation at the end to the District

20   Judge?

21   A.    Yes, ma'am.

22          THE COURT:  I find that the consent has been knowingly

23   and voluntarily given, and we'll proceed forward.

24   Q    (By The Court) Have you previously been provided with a copy

25   of the Indictment in your case?

1   A.   Yes, ma'am.

2   Q.   And did you have a chance to read that document yourself?

3   A.   It's pretty big, but yes, ma'am, I did.

4   Q.   All right, understood.  I'm glad you had a chance to read

5   it.

6        Did you also have the chance to talk to your attorney about

7   everything in the Indictment?

8   A.   Yes, ma'am.

9   Q.   At this point then you have a choice that you can make.  We

10  can have the Government's attorney read Count Six, the one you

11  intend to plead to, out loud or if you feel comfortable that you

12  understand what that count is, you can give up or waive the

13  reading of it in court.

14       So would you rather the Government's attorney read it or

15  would you rather give up or waive the reading?

16  A.   It's the one he just showed me, right, relating to the

17  firearm?

18  Q.   Yes.

19  A.   Then I'll waive it.  I understand it.

20  Q.   Okay, very good.

21       Even though you do understand what the charge is in Count

22  Six, there is something else that I do need to have read for

23  purposes of the record in your case.  That is what we call the

24  "essential elements" of that offense.  Those are the facts that

25  would have to be proven during any jury trial with competent

1   evidence and beyond a reasonable doubt before you could be found

2   guilty.  And the elements that will be read were listed out for

3   you in one of the documents in your case.  It's called your

4   "Factual Resume" in case you wanted to follow along as this is

5   read.

6       After these are read, I will ask you if you understand the

7   nature of the offense you intend to plead to.

8   A.   Yes, ma'am.

9            MR. FRAUSTO:  To prove the offense alleged in Count Six

10  of the Indictment, charging a violation of Title 18,

11  United States Code, Section 922(g)(1) and 924(a)(8), that is,

12  convicted felon in possession of a firearm, the following

13  elements must be proved beyond a reasonable doubt:

14           First, that the Defendant knowingly possessed a firearm

15  as charged in the Indictment;

16           Second, that before the Defendant possessed the

17  firearm, the Defendant had been convicted in a court of a crime

18  punishable by imprisonment for a term in excess of one year;

19           Third, that when he or she possessed the firearm, the

20  defendant knew he or she had been convicted of such a crime; and

21           Fourth, that the firearm possessed traveled in

22  interstate and foreign commerce.  That is, before the Defendant

23  possessed the firearm, it had traveled at some time from one

24  state to another or between any part of the United States and any

25  other country.

1  Q    (By The Court) Having heard all of those essential elements

2  being read out loud, do you understand the nature of the offense

3  you intend to plead "guilty" to?

4  A.   Yes, ma'am.

5        THE COURT:  Counsel, are you satisfied your client does

6  understand the nature of the offense?

7        MR. COATS:  I am, Your Honor.

8        THE COURT:  All right.  I find that Ms. Martinez does

9  understand the nature of the offense charged in Count Six of the

10  Indictment to which she intends to plead "guilty."

11  Q    (By The Court) Are you fully satisfied with your attorney

12  and the representation and advice you've received in the case?

13  A.   Yes, ma'am.

14  Q.   At this point in the hearing I want to talk with you about

15  the Plea Agreements in your case.  Again, we can have those read

16  out loud if you would like to hear them in court today or you can

17  give up or waive the reading of the Plea Agreements in court.

18       What would you like to do?

19  A.   I'll waive them.

20        THE COURT:  Counsel, do you join in that waiver?

21        MR. COATS:  I do, Your Honor.

22  Q    (By The Court) At any time in the past, ma'am, did you have

23  the chance to read your Plea Agreements?

24  A.   Yes, I did.

25  Q.   Did you also have the chance to talk to your attorney about

1    everything in both of those agreements?

2    A.   Yes.  He went in and talked to me about everything.  We went

3    through them together.

4    Q.   Very good.  Thank you for clarifying that.

5         Based on you reading them and you going over everything with

6    your attorney, do you believe that you understand everything

7    that's in the two agreements?

8    A.   Yes, ma'am.

9         THE COURT:  Counsel, are you satisfied your client does

10   understand her agreements?

11        MR. COATS:  Yes, Your Honor.

12   Q    (By The Court) Ms. Martinez, do you have any changes or

13   corrections to make to your Plea Agreements?

14   A.   No, ma'am.

15        THE COURT:  Counsel, would you have any to make?

16        MR. COATS:  No, Your Honor.

17        THE COURT:  All right.

18   Q    (By The Court) I am looking at the signature pages on these

19   documents.  It appears that you signed both of these recently.

20   Is that correct?

21   A.   Yes, ma'am.

22   Q.   Okay.

23        THE COURT:  Counsel, did you sign both as well?

24        MR. COATS:  I did, Your Honor.

25   Q    (By The Court) These Plea Agreements that we have just been

1    talking about do have different promises or agreements in them

2    between you and the Government about various things in your case,

3    and all of those promises and agreements are written down within

4    what you have signed.  What I'm going to ask you next relates to

5    something a little bit different than that idea.

6         Are there any other promises or agreements in your case that

7    are not written down within these signed documents but that

8    you're still relying on in order to plead "guilty?"

9    A.   No, ma'am.

10   Q.   Has anyone forced you or threatened you in any way to plead

11   "guilty"?

12   A.   No, ma'am.

13   Q.   Are you pleading "guilty" voluntarily and of your own free

14   will because you are guilty?

15   A.   Yes, ma'am.

16   Q.   Do you understand that by pleading "guilty" to a felony

17   offense, if the District Judge accepts the plea, you then would

18   be adjudged guilty and a judgment of guilt can deprive you of

19   valuable rights that you have?

20        Meaning if you're found guilty, you may not be able to vote,

21   to serve on a jury, to hold public office, or to possess any kind

22   of a firearm.

23   A.   Yes, ma'am.

24   Q.   Do you understand that under the Constitution and laws of

25   the United States, you do have the right to plead "not guilty"

1   and then you could go to trial in front of a jury on all the

2   charges in the Indictment that relate to you?

3   A.   Yes, ma'am.

4   Q.   Are you aware that at trial, as well as all the other parts

5   of your case, you're entitled to have your lawyer help you at

6   each step?

7   A.   Yes, ma'am.

8   Q.   Do you understand that during any trial, you're presumed

9   innocent and it is the Government who has the burden to prove you

10  guilty with competent evidence and beyond a reasonable doubt?

11  A.   Yes, ma'am.

12  Q.   Do you understand that during a trial, the Government would

13  have to bring its witnesses into the courthouse.  They would

14  testify in front of you, and then you would be able to hear and

15  see what they were testifying to.  Your attorney could also ask

16  some questions.

17       Do you understand that?

18  A.   Yes, ma'am.

19  Q.   Do you understand that at trial, you also could testify and

20  present evidence in your own defense, if you wanted to do that

21  voluntarily, but that you could never be forced to testify

22  against yourself?

23  A.   Yes, ma'am.

24  Q.   Do you understand that if you decided not to testify or

25  present evidence in your own defense at trial, that those facts

1   could not be used against you during the trial?

2   A.   Yes, ma'am.

3   Q.   Are you aware that your lawyer could issue legal documents

4   that are called "subpoenas" that would require witnesses who were

5   favorable to your side of this case to come into the courthouse

6   and then those witnesses could testify for you?

7   A.   Yes, ma'am.

8   Q.   Do you understand that if you do plead "guilty" this

9   afternoon and the District Judge accepts the plea, you'll give up

10   your right to have a trial in front of a jury as well as all

11   these other rights I've described?

12   A.   Yes, ma'am.

13   Q.   Do you understand also that by pleading "guilty" today, you

14   give up your right not to testify against yourself?

15      And that's because I will ask you questions during the

16   hearing to establish that you're guilty and as a part of the

17   hearing you would admit your guilt.

18   A.   Yes, ma'am.

19   Q.   At this point in your hearing, ma'am, I need to make certain

20   that you understand what the possible penalties and consequences

21   are if there's a conviction on this offense in Count Six.  These

22   were all listed out within Paragraph 3 of the Plea Agreement

23   you've signed.  The Government's attorney will read those out

24   loud for us, though.  And once that's done, I'll ask if you

25   understand.

1      MR. FRAUSTO:  The maximum penalties the Court can

2  impose as to -- This says "Count One of the Indictment,"

3  Your Honor, but can we change it to Count Six?

4      THE COURT:  Yes.

5      MR. COATS:  I do agree, Your Honor.

6      THE COURT:  Okay.  All right.  If you all just would

7  initial that.  Have Ms. Martinez initial that, and then we will

8  replace that page on the Court's document with the corrected

9  image that says "Count Six."

10     (Pause)

11     MR. FRAUSTO:  May I proceed, Your Honor?

12     THE COURT:  Yes, please.

13     MR. FRAUSTO:  The maximum penalties the Court can

14 impose as to Count Six of the Indictment include the following:

15     Imprisonment for a period not to exceed 15 years;

16     A fine not to exceed $250,000 or twice any pecuniary

17 gain to the Defendant or loss to the victims;

18     A term of supervised release of not more than three

19 years which may be mandatory under the law and will follow any

20 term of imprisonment.  If the Defendant violates the conditions

21 of supervised release, the Defendant could be imprisoned for the

22 entire term of supervised release;

23     A Mandatory Special Assessment of $100;

24     Restitution to the victims or to the community which is

25 mandatory under the law and which the Defendant agrees may

1    include restitution arising from all relevant conduct, not

2    limited to that arising from the offense of conviction alone;

3         Costs of incarceration and supervision; and

4         Forfeiture of property.

5    Q    (By The Court) Having heard all of those possible penalties

6    and consequences being read out loud, do you understand each of

7    those?

8    A.   Yes, ma'am.

9    Q.   As all of that was read, there was a phrase that was used

10   within the federal court system.  It is what we call "supervised

11   release."  I want to explain a couple of things about that.

12        First, "supervised release" is a time period that would

13   follow your release from any possible term of imprisonment that

14   you receive.  While you were on supervised release, the District

15   Judge will have given you a set of terms and conditions that you

16   have to follow.  In other words, he's going to give you rules

17   about what you can do and then what you can't do after you're

18   released from any possible prison sentence.

19        Second, if you violate any of those terms and conditions, in

20   other words, if you break the rules, then your release can be

21   revoked.  That means you can go back to prison without receiving

22   credit for any of the time that you already had spent out of

23   prison and following the rules up until that point in time.  Do

24   you understand that?

25   A.   Yes, ma'am.

1    Q.   Has anyone made a promise to you as to exactly what your

2    sentence in this case will be?

3    A.   No, ma'am.

4    Q.   Do you understand it's the District Judge and only the

5    District Judge who decides your sentence?

6    A.   Yes, ma'am.

7    Q.   In deciding a sentence for your case, the District Judge is

8    required to consider what are called the *"United States*

9    *Sentencing Guidelines"* as well as the punishment range within the

10   *Guidelines*.  However, neither of those things is binding on him.

11   Do you understand?

12   A.   Yes, ma'am.

13   Q.   Our laws require that any sentence the District Judge

14   decides on for your case does six different things:

15        Reflects the seriousness of the offense;

16        Promotes respect for the law;

17        Provides just punishment;

18        Affords adequate deterrence for future crime;

19        Protects the public, and then finally,

20        Provides you with any needed educational or vocational

21   training, medical care or other correctional treatment.

22        Do you understand?

23   A.   Yes, ma'am.

24   Q.   Have you and your attorney talked about how these *Sentencing*

25   *Guidelines* might possibly apply to your case?

1    A.    Yes, ma'am.

2    Q.    It is those *Sentencing Guidelines* you have talked about with

3    him that provide.  The District Judge also considers some other

4    factors as he is deciding a sentence in your case.  Those are:

5         The actual conduct in which you engaged;

6         To consider if there's a victim of the offense;

7         The role that you played; and then

8         Whether you have accepted responsibility for your relevant

9    conduct or have attempted to obstruct justice.

10        Do you understand?

11   A.    Yes, ma'am.

12   Q.    Are you aware that your criminal history is an important

13   factor under the *Sentencing Guidelines*?

14   A.    Yes, ma'am.

15   Q.    When you and your attorney talked about the *Sentencing*

16   *Guidelines* and how they might apply in your case, did he give you

17   an estimate or an opinion as to what he thought the guideline

18   range might be if you accepted the plea offer only to Count Six

19   of the Indictment versus if you went to trial on all of the

20   charges in the Indictment that related to you?

21   A.    Yes, ma'am.

22   Q.    Do you understand that when your attorney gave you that

23   opinion about how those different situations might work out, that

24   he still can't promise you that opinion is correct?

25   A.    Yes, ma'am.

1  Q.   Are you aware the reason that he can't make promises about

2  the *Sentencing Guidelines*, even though he has a lot of experience

3  with them, is because the District Judge always has the ability

4  to do something different with your sentence than what your

5  attorney's opinion is?

6  A.   Yes, ma'am.

7  Q.   Neither the District Judge, nor your attorney can determine

8  exactly what the sentencing guideline range in your case will be

9  until after a probation officer writes what is called the

10 "Presentence Report" and then both you and the Government have a

11 chance not only to review the report but also to object to the

12 facts that are in the report as well as to the guideline range

13 recommended in there.

14       Do you understand that process?

15 A.   No, I don't understand that.

16 Q.   Okay.  Let me break that down.  And then if you need to talk

17 to Mr. Coats, you can talk to him about it.

18 A.   All right.

19 Q.   After this hearing is over, assuming that you do enter a

20 plea of "guilty," what will happen is the judge will set up a

21 schedule for sentencing to be in several months.  During the time

22 period between now and sentencing, there will be a report that is

23 written that will help the District Judge decide what the

24 appropriate sentence is.  That report that will be written is

25 what is called the "Presentence Report" or the "PSR."

1    After that report is written, you'll have a chance to go

2    over it with your attorney.  The Government will also have a

3    chance to look at it.  Each of you then can file objections to

4    that report that the District Judge would consider and rule on

5    during the Sentencing Hearing.  The purpose of that report is to

6    give information to the District Judge to help him decide what

7    the appropriate sentence should be in your case.

8        Does all of that make sense?

9    A.   Yes, ma'am.

10   Q.   Okay.  Do you want to talk to Mr. Coats about anything I

11   just explained?

12   A.   No.  It's okay.  I understand.

13   Q.   All right.  So let me go back and try to ask that question

14   again and maybe ask it in a better way.

15       Do you understand that not -- not your lawyer and not the

16   District Judge will be able to decide on a sentencing guideline

17   range for your case until after that Presentence Report that has

18   a lot of information in it is given to everyone, and also they

19   can't decide -- Let me say that differently.

20       The District Judge cannot decide the sentencing guideline

21   range until after he reads and rules on any objections that the

22   parties might make.

23   A.   Yes, ma'am.

24   Q.   Okay.  Do you understand that no one, not even your

25   attorney, can predict ahead of time what the sentence in your

1    case will be?

2    A.   Yes, ma'am.

3    Q.   Do you understand that after it is decided what the

4    sentencing guideline range in your case is, the District Judge

5    will still have the authority to decide on a sentence that is

6    more severe than what's called for under those *Sentencing*

7    *Guidelines*?

8    A.   Yes, ma'am.

9    Q.   Let me look at one thing real quick.

10        It is within Paragraph 14 of your Plea Agreement where you

11   have given up your right to an appeal except in the circumstances

12   that were listed out in that paragraph.

13        Do you understand that?

14   A.   Yes, ma'am.

15   Q.   Parole for this offense to which you intend to plead

16   "guilty" has been eliminated in the federal system.  That means

17   that if you are sentenced to prison in your case, when you're

18   released, then it can't be to parole.  Instead, you'll be placed

19   under the terms of supervised release.

20        Do you understand?

21   A.   Yes, ma'am.

22   Q.   Do you understand that if the sentence our District Judge

23   decides on for your case happens to be more severe than what you

24   have expected, you are still bound by a guilty plea today and you

25   don't have the right to withdraw that guilty plea?

1    A.    Yes, ma'am.

2    Q.    In just a moment I'm going to ask how you plead.  Before I

3    ask that question, though, is there anything you want to talk to

4    your attorney about?

5    A.    No, ma'am.

6    Q.    Having been informed of your rights and the possible

7    consequences of pleading "guilty," how do you plead to Count Six

8    of the Indictment?

9    A.    Guilty.

10   Q.    Before I can recommend to the District Judge that he accepts

11   the guilty plea you just entered, I do have to ask that second

12   set of questions I mentioned all the way at the beginning of the

13   hearing.  Those are the questions to make certain that we have

14   facts in your case that will support your guilty plea.

15          In that regard, we can have the Government's attorney read

16   your Factual Resume out loud or you could waive the reading of

17   that in court.  What do you prefer?

18   A.    I'll waive it.

19          THE COURT:  Counsel, do you join in that waiver?

20          MR. COATS:  I do, Your Honor.

21   Q    (By The Court) At any time in the past did you have the

22   chance to fully read your Factual Resume?

23          THE DEFENDANT:  This one?

24          MR. COATS:  Yes.

25   A.    Yes, Your Honor.

```
 1   Q.   Okay.  Do you understand everything that's in that document?

 2   A.   Yes, Your Honor.

 3   Q.   Do you have any changes or corrections to make to your

 4   resume?

 5   A.   No, ma'am.

 6            THE COURT:  Counsel, do you have any to make?

 7            MR. COATS:  No, Your Honor.

 8   Q    (By The Court) I've also looked at the signatures on that

 9   document.  It appears you signed that also.  Is that correct?

10   A.   Yes, ma'am.

11            THE COURT:  Counsel, did you sign as well?

12            MR. COATS:  I did, Your Honor.

13   Q    (By The Court) Ms. Martinez, do you admit under oath today

14   that this Factual Resume in your case is true and correct in

15   every respect?

16   A.   Yes, ma'am.

17   Q.   Do you also admit under oath that you committed each of the

18   essential elements of this offense charged by Count Six of the

19   Indictment?

20   A.   Yes, ma'am.

21            THE COURT:  Being satisfied with the responses that

22   have been given during the hearing, I make the following finding

23   on the record:

24            In the case of the *United States of America versus*

25   *Rosalinda Clarinda Martinez*, Cause No. 2:24-CR-65-Z-BR-(2), I
```

 1    find that Ms. Martinez is fully competent and capable of entering

 2    an informed plea.  Her plea of "guilty" to Count Six of the

 3    Indictment is a knowing and voluntary plea that is supported by

 4    an independent basis in fact that contains each of the essential

 5    elements of the offense charged by Count Six of the Indictment.

 6           The Court is recommending that the District Judge

 7    accept her plea.  And if he does accept the plea, then she will

 8    be adjudged guilty of this offense charged by Count Six of the

 9    Indictment.

10           I'll have a couple of questions to ask at the very end

11    of the hearing.  Before I ask those, though, I want to explain a

12    couple of things about what you can expect will happen after

13    court is over.

14           The first thing that will happen is I will sign a

15    document today that is called "Report and Recommendation

16    Concerning Guilty Plea."  That report is how I communicate to the

17    other judge to tell him that we had a hearing where you pled

18    "guilty" and also that I'm recommending that he accepts it.

19    You'll have 14 days after today to make any kind of objection

20    that you would want to make to the fact I'm recommending he

21    accepts the guilty plea.

22           Second thing that will happen is sometime this week the

23    District Judge will enter his own Order that sets out the

24    schedule for everything that happens after today in the case.

25    That new Scheduling Order will give you the date that sentencing

1    takes place which, as I said before, will be in several months.

2           During sentencing, the District Judge will hear from

3    you, your attorney, then usually up to three witnesses on your

4    behalf.  You can have people write letters to him, also, if you

5    would like, that talk about you and your character.  Your

6    attorney can help coordinate all of that.  And as long as those

7    kinds of letters are received on time, the District Judge will

8    read all of those before your Sentencing Hearing.

9           Finally, there will be a probation officer who writes

10   that Presentence Report that we had talked about a little earlier

11   in the hearing.  As I mentioned, the report is written in order

12   to help the District Judge decide what the appropriate sentence

13   should be.  So for that reason, it's important to you that you

14   cooperate with all the aspects of the report.  There will

15   probably be a meeting with a probation officer to help get some

16   information from you that will go into that report.  Your

17   attorney can be there with you if there is a meeting like that

18   with the probation officer.

19          Another reason it is important for you to cooperate

20   with respect to that report is because the probation officer who

21   writes it does have the ability to recommend a decrease in your

22   offense level for what's called "acceptance of responsibility."

23          Then finally, that whole report, as I mentioned

24   earlier, is what helps everyone to calculate the sentencing

25   guideline range in your case.

1          You told me at the beginning of the hearing that,

2    first, you've been trying to access some help with respect to

3    mental health but have not been successful.

4          THE DEFENDANT:  It's only -- It's only because federal

5    don't give -- federal don't have it there.

6          THE COURT:  I have heard that before in terms of how

7    things work at -- at --

8          THE DEFENDANT:  Randall.

9          THE COURT:  -- Randall County.

10          You also told me that within the last week or two you

11    had some teeth pulled and have been on some pain medication for

12    that.

13          THE DEFENDANT:  Yes.

14          THE COURT:  With respect to both of those things,

15    though, you didn't think that they would interfere with you

16    understanding --

17          THE DEFENDANT:  No.

18          THE COURT:  -- what was going to happen.  I have to go

19    back and ask you that again just to confirm, though, now that we

20    finished with the hearing.

21          Is there anything you can think of, Ms. Martinez, about

22    the fact that you have not gotten the mental health treatment

23    that you would like to receive or that you recently have been on

24    some medicine for a dental procedure that you think made you not

25    understand what we did?

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  Okay.  In other words, could you understand

3  not only what happened but also everything I asked you?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Okay.  That is everything that I have for

6  your hearing this afternoon, ma'am.  You'll be remanded to

7  custody, and good luck as you start the last part of your case.

8          (Hearing adjourned at 2:26 PM.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


         I, Deborah A. Kriegshauser, Federal Official Realtime

Court Reporter, in and for the United States District Court for

the Northern District of Texas, do hereby certify that pursuant

to Section 753, Title 28, United States Code, that the foregoing

is a true and correct transcript of the electronically-recorded

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the regulations of

the Judicial Conference of the United States.

         Dated this 19th day of June, 2025.


                         /s/ Deborah A. Kriegshauser
                         _____

                         DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                         FEDERAL OFFICIAL COURT REPORTER